IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL LAINE, | § | |
| | § | No.   149, 2017 |
| Plaintiff-Below, | § | |
| Appellant, | § | Court Below:   Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No.: K15C-12-008 |
| SPEEDWAY, LLC, | § | |
| | § | |
| Defendant-Below, | § | |
| Appellee. | § | |

Submitted:   October 25, 2017
Decided:   January 8, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ,** and
**TRAYNOR**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court.   **AFFIRMED**.

Nicholas H. Rodriguez, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware,
for Appellant, Michael Laine.

Jessica L. Tyler, Esquire, and Sarah B. Cole, Esquire (*Argued*), Marshall, Dennehey,
Warner, Coleman & Goggin, Wilmington, Delaware, for Appellee, Speedway, LLC.

**VAUGHN**, Justice:

The Plaintiff/Appellant, Michael Laine, slipped and fell on ice near a gas pump on the premises of a convenience store-gasoline station operated by the Defendant/Appellee, Speedway, LLC ("Speedway") in Dover. He was the driver of a Modern Maturity Center shuttle bus and slipped when he stepped off the shuttle to fill its tank with gasoline. The fall caused him to sustain serious physical injuries. The ice was caused by a light, freezing rain which was then falling. Mr. Laine filed suit against Speedway, alleging that negligence on Speedway's part was the proximate cause of his injuries. The Superior Court granted summary judgment for Speedway, holding that under the continuing storm doctrine Speedway was permitted to wait until the freezing rain had ended and a reasonable time thereafter before clearing ice from its gasoline station surface. There are two questions on appeal. The first is whether a business owner that remains open during a winter storm should be able to avail itself of the continuing storm doctrine at all, that is; whether we should continue to recognize the doctrine. The second is whether the continuing storm doctrine applies to the facts of this case. For the reasons which follow, we have concluded that the continuing storm doctrine should continue to be recognized and that it does apply to the facts of this case. The Superior Court is affirmed.

1

# I

On January 10, 2014, Speedway's convenience store-gasoline station in Dover opened at 6:00 a.m. Two employees were on hand, Jessica Lorilla and John Tetuan.

According to weather records, rain was falling at 6:54 a.m. The previous weather reading was taken at 6:20 a.m. and did not show rain falling. Therefore, it can be inferred that rain began falling sometime between 6:20 a.m. and 6:54 a.m. The temperature when those readings were taken was 32 degrees Fahrenheit. The rain was a freezing rain which continued throughout the day.

At 7:00 a.m. Ms. Lorilla slipped on ice outside the front door of the convenience store. She notified Mr. Tetuan, who was to call the ice and snow removal company used by Speedway. Ms. Lorilla worked until 11:00 a.m. or 1:00 p.m. and has no recollection of the ice and snow removal company being there, but there is a record of an invoice from the company for work done sometime that day. The two employees took no further steps concerning ice outside the store.

Meanwhile, at 7:05 a.m. Mr. Laine, a shuttle bus driver for Modern Maturity Center, began driving a shuttle bus from the Center to Speedway's gasoline station. In his deposition, Mr. Laine testified that he recalled that the roads from the Modern

2

Maturity Center to Speedway's property were wet, and a light rain or drizzle was falling.   After stopping the shuttle bus at a gas pump at Speedway's gas station, Mr. Laine stepped out, slipped on ice and fell.   It is undisputed that the ice upon which Mr. Laine slipped was caused by the rain freezing upon contact with the gasoline station surface.

Another customer reported Mr. Laine's fall to Ms. Lorilla and she came out to assist him.   An incident report prepared that day records Mr. Laine's fall as occurring at 7:15 a.m.   Mr. Laine carried out his Modern Maturity Center duties for the rest of that day but later began to feel pain.   Ultimately, it was determined that the fall caused him to suffer serious physical injuries, and he has not been able to return to work.

Schools remained open that day, and there is no evidence of businesses closing.

Mr. Laine filed suit against Speedway, alleging negligence on its part for failure to maintain the premises in a reasonably safe condition, failure to make reasonable inspections of the premises, failure to warn him of the hazardous conditions that existed, and failure to remove ice at the pump where he fell. Speedway filed a motion for summary judgment, arguing that under the continuing

storm doctrine it was permitted to wait until the freezing rain ended and a reasonable time thereafter before removing the ice from its premises. The Superior Court granted the motion, finding that the continuing storm doctrine was a valid defense to Mr. Laine's claims of negligence. This appeal followed.

## II

"This Court reviews *de novo* the Superior Court's grant or denial of summary judgment 'to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.'"[1]

## III

Generally, a landowner has a duty to exercise reasonable care in keeping its premises safe for the benefit of business invitees.[2] This includes keeping the premises reasonably safe from natural accumulations of ice and snow.[3] In *Young v. Saroukos*, the Superior Court recognized that the landowner's duty to keep its

---

[1] *Brown v. United Water Del., Inc.*, 3 A.3d 272, 275 (Del. 2010) (quoting *Estate of Rae v. Murphy*, 956 A.2d 1266, 1269–70 (Del. 2008)).
[2] *Hamm v. Ramunno*, 281 A.2d 601, 603 (Del. 1971).
[3] *Monroe Park Apts., Corp. v. Bennett*, 232 A.2d 105, 108 (Del. 1967).

premises reasonably safe from natural accumulations of ice and snow was subject to a rule known as the continuing storm or storm in progress doctrine.[4]

In *Young*, the plaintiff slipped on ice and snow about 9:30 p.m. on March 4, 1960 while proceeding down a ramp entrance toward the door of her basement apartment. Seven or eight inches of snow fell on March 3 and March 4, with snow flurries continuing late into the evening of March 4. The weather conditions on March 4 were cold and windy, and snow was drifting. After considering authorities from other jurisdictions, the Superior Court adopted the continuing storm doctrine, stating:

> The authorities are in substantial accord in support of the rule that a business establishment, landlord, carrier, or other inviter, in the absence of unusual circumstances, is permitted to await the end of the storm and a reasonable time thereafter to remove ice and snow from an outdoor entrance walk, platform, or steps. The general controlling principle is that changing conditions due to the pending storm render it inexpedient and impracticable to take earlier effective action . . . .[5]

Under the continuing storm doctrine, it is reasonable for a business owner to wait until a storm has ended and a reasonable time thereafter to remove natural accumulations of ice and snow in the absence of unusual circumstances. The

---

[4] *Young v. Saroukos*, 185 A.2d 274 (Del. Super. Ct. 1962).
[5] *Id.* at 165 (quoting *Walker v. Memorial Hospital*, 45 S.E.2d 898, 902 (Va. 1948)).

rationale for the rule, as stated in *Young*, is that it is "inexpedient and impracticable to take earlier effective action."[6]

Since *Young*, the Superior Court has discussed the continuing storm doctrine in a number of cases. In *Woods v. Prices Corner Shopping Center Merchants Ass'n*, the plaintiff slipped and fell on ice and snow in the parking lot of the Prices Corner Shopping Center.[7] It snowed three times in the week before her fall. Temperatures were in the 0 to 10 degrees Fahrenheit range. No effort had been made to remove ice and snow. In denying a defense motion for summary judgment, the court held that a business owner's duty to keep its business premises safe includes keeping the premises safe from natural accumulations of ice and snow, that the owner is entitled to wait until the end of a snow storm and a reasonable time thereafter to remove ice and snow, and that the reasonableness of any delay should be treated as any question of fact.

In *Kovach v. Brandywine Innkeepers, Ltd. P'shp*, the plaintiff slipped on an icy, snowy surface in the defendant's parking lot during a snow storm.[8] The Superior Court granted summary judgment for the defendant under the continuing

---

[6] *Id.*

[7] *Woods v. Prices Corner Shopping Center Merchants Ass'n*, 541 A.2d 574 (Del. Super. Ct. 1988).

[8] *Kovach v. Brandywine Innkeepers, Ltd. P'shp*, 2001 WL 1198944 (Del. Super. Ct. Oct. 1, 2001).

storm doctrine. In doing so, the court rejected a contention the defendant assumed a duty to make the parking lot safe by beginning snow removal operations while the storm was still in progress.

In *Morris v. Theta Vest, Inc.*, the plaintiff slipped and fell on ice just outside his landlord's business premises.[9] Witnesses described precipitation which was falling at the time as freezing rain or sleet. It was undisputed that the storm was ongoing when the plaintiff fell. The Superior Court granted summary judgment for the defendant under the continuing storm doctrine. The landlord had salted the area about five or six hours before the plaintiff fell. The court rejected the plaintiff's contention that by salting the area, the landlord had assumed a duty to make the premises safe. *Morris* was affirmed by this Court on appeal.[10]

In *Elder v. Dover Downs, Inc.*, the plaintiff slipped and fell on a patch of ice which was obscured by snow in a bus stop area in Dover Downs' parking lot.[11] Her fall occurred at approximately 1:30 p.m. on January 30, 2010. A snow storm began around 10:00 a.m. on January 30 and lasted until the early morning hours of the next day. The Superior Court again granted summary judgment for the defendant under

---

[9] *Morris v. Theta Vest, Inc.*, 2009 WL 693253 (Del. Super. Ct. Mar. 10, 2009).
[10] *Morris v. Theta Vest, Inc.*, 2009 WL 2246777 (Del. Supr.).
[11] *Elder v. Dover Downs, Inc.*, 2012 WL 2553091 (Del. Super. Ct. July 2, 2012).

7

the continuing storm doctrine. The plaintiff argued that it was not snowing when she fell. The court rejected the contention that a lull interrupted a continuing storm.

In *Schnares v. General Floor Indus., Inc.*, the plaintiff slipped and fell on ice in the defendants' parking lot.[12] The Superior Court denied summary judgment for the defendants on the ground that there was a dispute of fact as to whether the plaintiff's fall came before or after the storm involved there began.

In *Demby v. Del. Racing Ass'n*, the plaintiff slipped and fell on ice at Delaware Park on December 14, 2013.[13] Weather records indicated that a storm arrived in the afternoon of December 14, 2013 with weather conditions alternating between light snow, freezing rain, and heavy rain from 2:40 p.m. through midnight. The plaintiff fell at 8:41 p.m. A surveillance video showed that freezing rain was falling at the time the plaintiff fell. The plaintiff argued that the continuing storm doctrine did not apply because it was not snowing when she fell. The Superior Court rejected the plaintiff's contention that the continuing storm doctrine applied only to falling snow and held that it also applied to ice caused by freezing rain.

In *Cash v. East Coast Prop. Mgmt., Inc.*, the plaintiff slipped and fell on ice on a sidewalk at an apartment building.[14] The ice was caused by falling rain. The

---

[12] *Schnares v. General Floor Indus., Inc.*, 2015 WL 5178403 (Del. Super. Ct. Sept. 3, 2015).
[13] *Demby v. Delaware Racing Ass'n*, 2016 WL 399136 (Del. Super. Ct. Jan. 28, 2016).
[14] *Cash v. East Coast Prop. Mgmt., Inc.*, 2010 WL 2336867 (Del. Super Ct. June 8, 2010).

Superior Court again granted summary judgment for the defendant based on the continuing storm doctrine. *Cash* was affirmed by this Court on appeal.[15]

These cases illustrate that the continuing storm doctrine has been applied consistently by the Superior Court since first recognized in *Young*, and this Court has affirmed at least two Superior Court decisions granting summary judgment to the defendant based on the doctrine where the ice was formed by rain or sleet. There is no contrary Delaware authority. The continuing storm doctrine has been recognized in many jurisdictions.[16]

**IV**

Despite the widespread acceptance of the continuing storm doctrine, the appellant's first contention is a direct challenge to the continuing storm doctrine. He contends that when a business decides to remain open during a storm, it should not be able to avail itself of the continuing storm doctrine. Where a business decides to remain open during a storm, the appellant argues, its conduct should be judged by the general rule that a business owner has a duty to keep its premises

---

[15] *Cash v. East Coast Prop. Mgmt., Inc.*, 2010 WL 4272925 (Del. Supr.).

[16] *Kraus v. Newton*, 558 A.2d 240, 243–244 (Conn. 1989); *Reuter v. Iowa Trust & Sav. Bank*, 57 N.W.2d 225, 227 (Iowa 1953); *Mattson v. St. Luke's Hospital of St. Paul*, 89 N.W.2d 743, 745 (Minn. 1958); *Walker v. Memorial Hospital*, 45 S.E.2d 898, 902 (Va. 1948); *Agnew v. Dillons, Inc.*, 833 P.2d 1049, 1054 (Kan. Ct. App. 1991); *Fusco v. Stewart's Ice Cream Company*, 610 N.Y.S.2d 642, 642 (N.Y. App. Div. 1994).

reasonably safe for its business invitees. In support of this contention, he argues that, unlike conditions which existed when *Young* was decided, we now live in an era in which commercial and residential property owners contract with companies that have highly mechanized snow and ice removal equipment. Such companies, the appellant argues, provide their services based on the weather, so that our ability to attend work, school, appointments, and recreational functions is rarely delayed. The appellant also argues that in this particular case, the two employees had a duty to inspect the premises for icing and a duty to warn customers of the ice through the use of cones or tape, or by simply deciding not to remain open.

In the alternative, the appellant argues that extending the continuing storm doctrine to a rain event is a huge departure from the facts of *Young,* and the doctrine should be limited to severe storms like the snow storm in that case.

If the decision of the Superior Court is allowed to stand, the appellant contends, two undesirable results will occur. First, any plaintiff injured in any weather event will not be able to recover for his or her injuries. Second, the landowner may well be lax in its duty to make safe any dangerous condition on the land caused by a weather-related event, knowing that if the cause of injury is

weather-related, the owner will be relieved of its duty to make the premises reasonably safe.

The appellee contends that the Superior Court correctly applied the continuing storm doctrine.

As mentioned, the rationale for the continuing storm doctrine rests on the view that it is reasonable for a landowner to wait until a storm ends and a reasonable time thereafter before removing accumulations of ice and snow due to the impracticability or ineffectiveness of continually removing such accumulations while the storm is still in progress. While the appellant has referred to the availability of modern, mechanized ice and snow removal equipment, no evidence has been presented indicating that the rationale for the continuing storm doctrine no longer applies. There is no evidence before us that Speedway could have effectively removed the ice from around its gasoline pumps, by some means, while the freezing rain continued to fall.[17] The appellant has not offered any case law holding that the rationale of the doctrine no longer applies. In the absence of such evidence or such

---

[17] We realize that Speedway's snow and ice removal company may not have been able to respond to Speedway's location in the relatively short period of time between the onset of the freezing rain and the appellant's fall. The Superior Court made no findings on this point and there is no pertinent evidence on the point in the record. The record is also silent as to whether the two store employees had any means to attempt ice removal. The Superior Court did not decide the case on such factors, since they are not part of the continuing storm analysis which the Superior Court performed.

11

authority, we hold to the view, first expressed in this State in *Young*, and recognized by this Court in previous cases, that it is reasonable for a landowner to wait until a storm ends and a reasonable time thereafter before removing natural accumulations of ice and snow created by a storm, in the absence of unusual circumstances. We reject the appellant's contention that the continuing storm doctrine should not apply to a business which remains open during a storm.

Many people who have to travel during weather events benefit from businesses like gas stations, convenience stores, and pharmacies being open, which enable them to get fuel, food, and medicine when they may need them without delay. There is admittedly surface appeal to the argument that if a business is open, it has to be diligent to make its premises safe. But, situations like this case illustrate the problem with departing from the traditional rule. Even more than deep snow, a thin coat of ice can be slippery and hard to eradicate even with salting or chemicals. Inviting litigation over how often one has to salt or shovel during an active storm could be costly and lead businesses to shut down, for fear of suits. This could be detrimental to the many who must travel in active storm situations. [18]

---

[18] The continuing storm doctrine has been thought to address these concerns by alleviating the concern that the workers of businesses would be forced to engage in clean up at the worst periods of storms and by alleviating the concerns of business owners that if they stay open during a storm they will expose themselves to the expense of tort suits over falls that are a natural risk in any storm situation involving icy or snowy conditions. *See, e.g.*, 3 Premises Liability 3d § 49:16.10

Given that concern, we are reluctant to forsake the continuing storm doctrine, especially when another factor is considered. In active storm situations, customers are expected to be aware themselves of the risks of falling and to take care to protect themselves. They know it could be slippery and must dress and otherwise take the steps necessary to protect themselves against a potential fall. As sad as the plaintiff's injuries were, the reality is that there is no foolproof way to avoid the risk of slipping on ice. Some injuries are not the legal fault of anyone, they just are the result of the reality that nothing in life is entirely safe, and surely not walking on ice or snow. That does not mean that these injuries are not important and unfortunate,

---

(2017 ed.) ("The [storm in progress or continuing storm] defense evolved in recognition of the realities of problems caused by winter weather, that is, as a common sense rule arising from the fact that snow and ice conditions are unpredictable, natural hazards against which no one can insure and which in their nature cannot immediately be alleviated.") (quoting *Hilsman v. Sarwil Associates, L.P.*, 786 N.Y.S.2d 225, 226 (App. Div. 2004)); 74 A.L.R.5th 49 (Originally published in 1999) (discussing liability for parking lot slip-and-fall) ("It is patently unfair to make a landowner absolutely liable for every slip–and–fall accident on snow in a lot, especially as this would require the owner to spend the entire winter clearing the lot on pain of losing a liability suit. Moreover, it is equally unfair to require the lot owner to shoulder the expense of plowing and replowing the lot during the course of a continuous storm. In this vein, many jurisdictions have ruled that there is no liability for an accident that takes place while a storm is still going on or a reasonable time thereafter, to give the owner a chance to clear out the lot."); *Kovach v. Brandywine Innkeepers Ltd. P'ship*, 2001 WL 1198944, at \*2 (Del. Super. Ct. Oct. 1, 2001) ("Landowners should be encouraged to try to clear all public areas of snow and ice during and after snowstorms, if possible. Landowners should not fear legal liability for not clearing every inch of their property during an all-day snowstorm if they attempt to clear some public areas of snow during a snowfall. To hold otherwise would be a disincentive to vigilant efforts by landowners to monitor and clear snow during snowstorms. Every landowner would choose to wait out a snowstorm rather than clear a path for fear of legal jeopardy. Such a fear would be a grave detriment to the public.").

but before opening the door to trials about falls during active storms, this court needs reliable evidence that the existing rule does not strike the optimal balance for all Delawareans affected by the reality that bad weather happens.

We also reject the appellant's contention that the store employees had a duty to warn customers of ice at the time the appellant fell through the use of cones or tape. Generally, there is no duty to warn of icy conditions during a storm in progress.[19] The appellant cites no contrary authority.

We are also unpersuaded that the continuing storm doctrine should be limited to severe storms such as the one involved in *Young*. The rationale for the rule rests upon the existence of a fairly continuous natural accumulation of ice and/or snow created by ongoing precipitation. The rule does not depend upon whether that precipitation is in the form of freezing rain, snow, sleet or a combination of all three. As we have discussed, freezing rain can be one of the trickiest situations to deal with, and thus we are satisfied that the continuing storm doctrine may apply to freezing

---

[19] "The continuing storm doctrine suspends a property owner's general duty to exercise reasonable care in warning of . . . snow and ice hazards . . . ." *Alcala v. Marriott Intern., Inc.*, 880 N.W.2d 699, 711 (Iowa 2016). *See also Walker*, 45 S.E.2d at 907; *Childs v. Goodland Economy Lodging, Inc.*, 2012 WL 2149818, at *3 (Kan. Ct. App. 2012); *Wheeler v. Grande'vie Sr. Living Cmty.*, 31 A.D.3d 992, 993 (N.Y. App. Div. 2006).

14

rain as well as to a snow storm.   The result we reach is in accord with authorities in

other jurisdictions.[20]

The Superior Court correctly applied the continuing storm doctrine to the facts

of this case, and its judgment is affirmed.

---

[20] *See Kraus*, 558 A.2d at 241; *Mattson*, 89 N.W.2d at 744; *FAD Ltd. P'ship*, 377 S.E.2d 437, 438 (Va. 1989); *Rochford v. G.K. Dev. Inc.*, 845 N.W.2d 715, 716 (Iowa Ct. App. 2014); *Agnew*, 822 P.2d at 1051.