# IN THE SUPREME COURT OF IOWA

No. 19–1306

Filed June 5, 2020

**DEBRA GRIES,**

Appellant,

vs.

**AMES ECUMENICAL HOUSING, INC.** d/b/a **STONEHAVEN APTS.,**

Appellee.

---

Appeal from the Iowa District Court for Story County, James A. McGlynn, Judge.

Plaintiff appeals from the adverse grant of summary judgment in her personal injury suit. **REVERSED AND REMANDED.**

Frederick W. James of The James Law Firm, P.C., Des Moines, and Shawn Smith of Shawn Smith, Attorney at Law, PLLC, Ames, for appellant.

Michael C. Richards and Daniela Erickson of Davis, Brown, Koehn, Shors & Robert, P. C., for appellee.

Thomas M. Boes of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for amici curiae Iowa Defense Counsel Association, Iowa Insurance Institute, and Iowa Association of Business and Industry.

**McDONALD, Justice.**

Debra Gries slipped and fell on an icy sidewalk outside her apartment building. She filed a negligence suit against her landlord, Ames Ecumenical Housing, Inc. d/b/a Stonehaven Apartments (Stonehaven). The district court granted Stonehaven's motion for summary judgment, holding, pursuant to the continuing storm doctrine, Stonehaven had no duty at the time Gries fell to remove or ameliorate the natural accumulation of snow or ice on the sidewalk. On appeal, Gries argues this court should abandon the continuing storm doctrine in light of this court's adoption of the duty analyses set forth in the Restatement (Third) of Torts: Liability for Physical and Emotional Harm. (Am. Law Inst. 2010) [hereinafter Restatement (Third)]. She argues, in the alternative, the district court erred in holding Stonehaven was entitled to judgment as a matter of law pursuant to the continuing storm doctrine.

I.

Our review is for the correction of legal error. *See Baker v. City of Iowa City*, 867 N.W.2d 44, 51 (Iowa 2015). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The party seeking summary judgment has the burden of establishing that the facts are undisputed and that the "party is entitled to a judgment as a matter of law." *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 677 (Iowa 2004) (quoting Iowa R. Civ. P. 1.981(3)). "When a motion for summary judgment is made and [properly] supported . . . [the opposing] party may not rest upon the mere allegations or denials in the pleadings . . . ." Iowa R. Civ. P. 1.981(5); *Bitner v. Ottumwa Cmty. Sch.*

*Dist.*, 549 N.W.2d 295, 299 (Iowa 1996). Instead, the resisting party must set forth specific material facts, supported by competent evidence, establishing the existence of a genuine issue for trial. *See* Iowa R. Civ. P. 1.981(5); *Bitner*, 549 N.W.2d at 299. "A fact is material if it will affect the outcome of the suit, given the applicable law." *Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006). An issue of fact is "genuine" if the evidence would allow "a reasonable jury [to] return a verdict for the nonmoving party." *Fees v. Mut. Fire & Auto. Ins.*, 490 N.W.2d 55, 57 (Iowa 1992). It is well established that speculation is not sufficient to generate a genuine issue of fact. *See Nelson v. Lindaman*, 867 N.W.2d 1, 7 (Iowa 2015).

## II.

The issue of whether we should abandon the continuing storm doctrine in light of our recent adoption of the duty analyses in the Restatement (Third) was presented to us once before in *Alcala v. Marriott International, Inc.*, 880 N.W.2d 699, 711 (Iowa 2016). We declined to reach the issue in that case because it was raised for the first time on further review. *See id.* at 711–12. The issue is now squarely presented in this appeal, and we conclude the continuing storm doctrine is consistent with the Restatement (Third) and remains good law.

The continuing storm doctrine is of long standing in Iowa. This court first adopted the rule in 1953 in *Reuter v. Iowa Trust & Savings Bank*, 244 Iowa 939, 57 N.W.2d 225 (1953). In *Reuter*, we said,

> The authorities are in substantial accord in support of the rule that a business establishment, landlord, carrier, or other inviter, in the absence of unusual circumstances, is permitted to await the end of the storm and a reasonable time thereafter to remove ice and snow from an outdoor entrance walk, platform, or steps. The general controlling principle is that changing conditions due to the pending storm render it

> inexpedient and impracticable to take earlier effective action, and that ordinary care does not require it.

*Id.* at 943, 57 N.W.2d at 225 (quoting *Walker v. Mem'l Hosp.*, 45 S.E.2d 898, 902 (Va. 1948)).

Long after our adoption of the continuing storm doctrine, "we changed the law concerning premises liability by abandoning the common law distinctions between invitees and licensees." *Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 909 (Iowa 2017). We concluded the "common law rules governing premises liability . . . to be replete with special rules and arbitrary distinctions." *Id.* In replacement of the old common law rules and distinctions, in *Koenig v. Koenig*, we adopted for land possessors a duty of reasonable care. 766 N.W.2d 635, 645 (Iowa 2009).

After *Koenig*, we adopted the duty analyses set forth in sections 7 and 51 of the Restatement (Third). First, in *Thompson v. Kaczinski*, we adopted the duty analysis set forth in section 7 of the Restatement (Third). *See* 774 N.W.2d 829, 835 (Iowa 2009) ("We find the drafters' clarification of the duty analysis in the Restatement (Third) compelling, and we now, therefore, adopt it."). The Restatement (Third) provides, "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Restatement (Third) § 7(a), at 77.

Subsequently, in *Ludman*, we explained the Restatement (Third) "adopted the position we took on premises liability" in *Koenig*. *Ludman*, 895 N.W.2d at 910. Because the Restatement (Third) regarding premises liability was consistent with *Koenig*, we adopted "the duty analysis for land possessors contained in section 51 of the Restatement (Third)." *Id.* Section 51 of the Restatement (Third) is a "specific application" of the duty to exercise reasonable care "based on the circumstance of real-property

ownership." Restatement (Third) § 51 cmt. *b,* at 244 (Am. Law Inst. 2012). Section 51 provides, in relevant part, "a land possessor owes a duty of reasonable care to entrants on the land with regard to . . . natural conditions on the land that pose risks to entrants on the land." Restatement (Third) § 51(c), at 242.

Gries makes no real doctrinal argument why the adoption of sections 7 and 51 of the Restatement (Third) counsels in favor of abandoning the continuing storm doctrine, and we see none. In adopting the Restatement (Third) duty analyses, we removed foreseeability from the "duty calculus." *McCormick v. Nikkel & Assocs., Inc.,* 819 N.W.2d 368, 371 (Iowa 2012). "But we did not erase the remaining law of duty; rather, we reaffirmed it." *Id.* Included in the body of reaffirmed law were exclusions from the ordinary duty of reasonable care. *See Huck v. Wyeth, Inc.,* 850 N.W.2d 353, 375 (Iowa 2014) ("We have made clear that our adoption of section 7 of the Restatement (Third) of Torts in *Thompson* did not supersede our precedent limiting liability . . . ."); *McCormick,* 819 N.W.2d at 371 (explaining the adoption of Restatement (Third) section 7 did not change our law modifying or eliminating the duty of reasonable care).

After the adoption of the duty analyses set forth in the Restatement (Third), this court and the court of appeals continued to find exceptions to the ordinary duty of reasonable care. In *Van Fossen v. MidAmerican Energy Co.,* we made clear that our previous law of duty was alive and well. 777 N.W.2d 689, 696–97 (Iowa 2009). We held employers of independent contractors do not owe a general duty of care under Restatement (Third) section 7. *Id.* In *Feld v. Borkowski,* we recognized contact sports are one of the "activities or circumstances [that] have been excepted from the reasonable-care duty." 790 N.W.2d 72, 76 (Iowa 2010). In *McCormick,* we reaffirmed the common law control principle on public policy grounds:

> Application of the control principle makes sense here from a public policy perspective. Consider the implications of a contrary rule that a party has created a nondelegable risk of harm if the electricity is on when it leaves the premises. No matter that the accident occurred a week later, or that the facility could not operate without electricity, or that the owner was fully aware of the relevant risks, or that the equipment had been locked up. To avoid potential liability, various parties (owners, landlords, repairpersons, etc.) would need to turn off utilities that involve any risk of hazard (e.g., gas, electricity) whenever they leave a property. These unnecessary shutoffs would result in burdens and inconveniences to businesses and the general public.

819 N.W.2d at 373. In *Huck*, we reaffirmed our precedents limiting liability and held brand drug manufacturers owed "no duty to consumers of generic drugs." 850 N.W.2d at 380. In *Rochford v. G.K. Development, Inc.*, 845 N.W.2d 715, 718 (Iowa Ct. App. 2014), and *Wailes v. Hy–Vee, Inc.*, 861 N.W.2d 262, 265–68 (Iowa Ct. App. 2014), the court of appeals applied the continuing storm doctrine. And, most recently, we upheld the ongoing vitality of the public-duty doctrine. *See Estate of McFarlin v. State*, 881 N.W.2d 51, 64 (Iowa 2016) (affirming "summary judgment based on the public-duty doctrine").

The cases reaffirming exceptions to the ordinary duty to exercise reasonable care are in accord with the Restatement (Third). The Restatement (Third) recognizes there are exceptions to the duty of reasonable care. *See* Restatement (Third) § 7(b), at 77 ("In exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification."); *id.* § 51 cmt. *b*, at 243–44 (recognizing the same exceptions to the duty of reasonable care apply with respect to causes of action based on premises liability).

In accord with the Restatement (Third), we have said "a lack of duty may be found if either the relationship between the parties or public considerations warrants such a conclusion." *McCormick*, 819 N.W.2d at 371. With respect to this second category, "[o]nly 'in exceptional cases' will th[e] general duty of reasonable care not apply. 'An exceptional case is one in which "an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases." ' " *Estate of Gottschalk v. Pomeroy Dev., Inc.*, 893 N.W.2d 579, 586–87 (Iowa 2017) (quoting *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 391 (Iowa 2010)). "The principle or policy that is the basis for modifying or eliminating the ordinary duty of care contained in § 7(a) may be reflected in longstanding precedent . . . ." Restatement (Third) § 7 cmt. *a*, at 78.

The continuing storm doctrine is a long-standing "articulated countervailing principle or policy" that warrants limiting liability for land possessors as a result of injury caused by the ongoing accumulation of ice or snow. At the eye of the continuing storm doctrine is a recognition of "[t]he feebleness of human . . . efforts in attempting to cope with the power of the elements." *Alcala*, 880 N.W.2d at 711 (quoting *Staples v. City of Spencer*, 222 Iowa 1241, 1244, 271 N.W. 200, 202 (1937) (alteration in original)). Because of our recognized feebleness in coping with the elements, "[t]he continuing-storm doctrine suspends a property owner's general duty to exercise reasonable care in warning of or removing snow and ice hazards until a reasonable time after the storm because continually clearing ice and snow during an ongoing storm would be impracticable." *Id.* As Justice Hecht noted in *Alcala*: "The rule's purpose is essentially to prevent land occupiers from having to undertake Sisyphean tasks every time it snows." *Id.* at 721–22 (Hecht, J., concurring in part, dissenting in part).

Significant policy reasons justify relieving a land possessor of the duty to undertake Sisyphean action during a storm. The continuing storm doctrine recognizes a land possessor is not a de facto insurer responsible for all accidents occurring on its property. *See Munsill v. United States*, 14 F. Supp. 2d 214, 221 (D.R.I. 1998) ("Requiring a business owner to remove snow before a storm ends would hold him to an extraordinary standard of care, forcing him, in effect, to become an insurer of the safety of business invitees."); *Martin v. Safeway Stores Inc.*, 565 P.2d 1139, 1141 (Utah 1977) ("Owners of stores, banks, office buildings, theaters or other buildings where the public is invited to come on business or for pleasure are not insurers against all forms of accidents that may happen to any who come. It is not the duty of persons in control of such buildings to mop the sidewalk dry or take other steps necessary to prevent the accumulation of moisture on the sidewalk that might freeze and create an icy condition.").

The doctrine also allows businesses to remain open to travelers and others who might need provisions or other supplies during a winter storm by "alleviating the concerns of business owners that if they stay open during a storm they will expose themselves to the expense of tort suits over falls that are a natural risk in any storm situation involving icy or snowy conditions." *Laine v. Speedway, LLC*, 177 A.3d 1227, 1232 n.18 (Del. 2018). Relatedly, the doctrine helps to reduce the total number of weather-related injuries by reducing the risk of injury to the land possessor and the land possessor's employees and contractors:

> Every pedestrian who ventures out [when the weather renders the premises slippery] knows he is risking the chance of a fall and of a possible serious injury. It is a hazard to which nature subjects all alike, him who undertakes to remove or correct it as well as the one for whose protection the risk of removal or correction is incurred. It would be an unreasonable rule which would impose upon an inviter the necessity of repeated excursions into the storm, with the attendant risks of

exposure and injury to himself, in order to relieve the invitee of all risk from this natural hazard.

*Walker*, 45 S.E.2d at 907.

Other courts have recognized these same public policy considerations and continue to adhere to the continuing storm doctrine or storm in progress doctrine. *See, e.g., Phillips v. Superamerica Grp., Inc.*, 852 F. Supp. 504, 506–07 (N.D. W.Va. 1994), *aff'd*, 54 F.3d 773 (4th Cir. 1995); *Finnigan v. United States*, No. 5:15-cv-3515-BHH-KDW, 2016 WL 5858715, at *7, *9 (D.S.C. Aug. 5, 2016); *Kraus v. Newton*, 558 A.2d 240, 243 (Conn. 1989); *Laine*, 177 A.3d at 1233; *Jones v. Hansen*, 867 P.2d 303, 311 (Kan. 1994); *Mattson v. St. Luke's Hosp. of St. Paul*, 89 N.W.2d 743, 745 (Minn. 1958); *Sherman v. N.Y. State Thruway Auth.*, 52 N.E.3d 231, 232 (N.Y. 2016); *Fuller v. Hous. Auth. of Providence*, 279 A.2d 438, 441 (R.I. 1971); *Grizzell v. Foxx*, 348 S.W.2d 815, 817 (Tenn. Ct. App. 1960); *Walker*, 45 S.E.2d at 904.

As these authorities show, the continuing storm doctrine reflects a widespread policy consensus that land possessors should not be forced to undertake snow or ice removal in the midst of a storm. The overall social costs of requiring people to go outside and clear during a storm exceed the overall social benefits of cleared passageways that will soon be covered over by additional accumulation. This social consensus is reflected in ordinances around our state that do not require land possessors to remove snow from sidewalks until *after* the last snow accumulation. *See, e.g.*, Ames, Iowa, Code § 22.2(2) (2017) ("No owner shall, for a period of ten (10) daylight hours *after the cessation of the storm* or cause of accumulation, permit snow, ice, or accumulations to remain upon the adjoining and abutting sidewalks." Emphasis added.)).

In sum, the doctrine holds a land possessor has no duty to remove the natural accumulation of snow or ice during an ongoing storm and for a reasonable time after the cessation of the storm. The doctrine is long-standing in Iowa. *See Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015) ("Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law."). The doctrine is consistent with the duty analyses of the Restatement (Third). The doctrine is supported by public policy considerations. The doctrine is the rule in a number of jurisdictions. We decline Gries's request to abandon the continuing storm doctrine.

### III.

Gries contends, in the alternative, the district court erred in granting Stonehaven's motion for summary judgment. She contends Stonehaven failed to establish the continuing storm doctrine entitled Stonehaven to judgment as a matter of law. We agree.

The summary judgment record shows the following. On the night of February 22, 2018, Gries exited her apartment building at approximately 10:30 p.m. to catch a cab and go to work. As she exited the building, Gries noticed it was cold and misting outside. She saw the sidewalk looked wet. She tested the sidewalk with her foot to check if it was icy. While taking "baby steps" toward the cab, Gries slipped and fell on the icy sidewalk. Gries was sixty-three years old at the time of the fall. The apartment building had a large sign outside proclaiming the apartment was "Senior and Mobility-Impaired Housing." As a result of the fall, Gries broke her left ankle and suffered other injuries.

The parties disputed the weather conditions at the time of the fall. In support of its motion for summary judgment, Stonehaven submitted the expert report of Dan Hicks. In preparing his report, Hicks relied on

information from three agencies and "various weather reporting stations in the Ames, Iowa area." According to Hicks,

> Precipitation was reported in the Ames, Iowa area on February 22 and early on February 23, 2018. Precipitation amounts for this period were in the range of .21 to .32 inches, with some trace amounts of snow reported. The automated weather reporting station at the Ames, Iowa Airport reported some light snow during the morning of February 22, 2018, then a brief period of freezing rain around 12:00 to 1:00 PM CST. Precipitation was again reported at this location starting between 6:00 and 7:00 PM CST on February 22, 2018 and continuing through the end of the day. There were times when precipitation was not recorded during this period. The precipitation type was reported as unknown and freezing rain, changing to rain on the evening of February 22, as the air temperature warmed from 32 degrees F. to slightly above freezing. The air temperature at this location was reported at 32 degrees F. on the evening of February 22, 2018 through around 9:00 PM CST, then in the range of 32 to 34 degrees F. for the rest of the evening until Midnight CST. Precipitation of unknown type was reported between 12:00 AM and 2:00 AM CST on February 23, 2018 with the air temperature at 32 degrees F.

Hicks opined,

> [T]he precipitation that fell in the Ames, Iowa area on the evening of February 22, 2018 would have resulted in some light ice accumulation and also liquid water accumulation on surfaces.

Gries submitted data from the National Oceanic and Atmospheric Administration (NOAA) that indicated only "0.00 to 0.16 inches of rain or melted snow fell . . . in the Ames area on February 22, 2018." No snow, ice pellets, or hail was recorded. According to the NOAA data, the weather station at the Ames airport, which was 1.07 nautical miles from the apartment, recorded no precipitation February 21 and only .16 inches of precipitation in the form of mist, freezing rain or drizzle, and smoke or haze on February 22.

The witnesses differed on the issue of whether snow and ice had accumulated or were accumulating on the apartment grounds and

whether there was active precipitation at the time of Gries's fall. Kevin Burkett, an administrator for Stonehaven, testified in his deposition that the sidewalk was clear of snow and ice at around four o'clock in the afternoon. He also testified that if he "had known that it was raining or ice was being created or there was snow," a staff member would have called the building's snow-removal contractors to remove it. Gries testified she did not know what the weather was like earlier in the day. But, as discussed above, she remembered it was cold and misty and the sidewalk looked wet at approximately 10:30 p.m. when she went outside.

On this record, the district court granted Stonehaven's motion for summary judgment. The district court found the parties' evidence on the weather conditions for that day did not differ. In the order granting summary judgment, the district court mistakenly identified Hicks's report as evidence provided by Gries in her resistance to the motion for summary judgment. Gries filed a motion to reconsider pursuant to Iowa Rule of Civil Procedure 1.904(2). In ruling on Gries's motion to reconsider, the district court admitted it "garbled the sources of the weather." It noted, however, "the key point [was] that the weather reports do not really contradict each other in any material way." The court explained,

> The one report from the site nearest to the scene of the accident confirms [Hicks's report]. Furthermore, plaintiff herself admitted that at the time and date in question it was misting, the sidewalk looked like it was wet and it was cold.

The court concluded,

> [P]laintiff failed to show that a material fact issue exists as to whether there was a continuing storm on the date and at the place in question. The Court continues to find that it is an undisputed fact that at all relevant times and at the location of plaintiff's apartment the air temperature fluctuated above and below the freezing point and there was a continuous period of some form of precipitation falling. The Court continues to find that there was a continuous winter storm at

the time in question and that the continuous storm doctrine should be applied.

The district court's sole focus on whether there was ongoing precipitation at the time Gries fell misapprehends the continuing storm doctrine. The doctrine is not "the continuing mist doctrine." Mere precipitation is not enough to constitute a storm sufficient to relieve a land possessor of the duty to remove or ameliorate the natural accumulation of snow or ice. Instead, there must be meaningful, ongoing accumulation of snow or ice. Only a weather event satisfying this standard constitutes a "storm" for the purposes of the continuing storm doctrine.

For example, in *Reuter*, we held the defendant was entitled to directed verdict where the plaintiff fell during the middle of an ongoing, severe snow storm. Specifically, on "the date of the accident, snow started falling sometime in the forenoon. It continued to fall until some time after the accident, gaining in volume as the day progressed. It was intermingled with rain, sleet, driving winds and a subfreezing temperature. As stated by several of the witnesses, it was the heaviest snow fall of the winter." *Reuter*, 244 Iowa at 941, 57 N.W.2d at 226. In concluding the defendant was entitled to directed verdict, we explained the "general controlling principle is that changing conditions due to the pending storm render it inexpedient and impracticable to take earlier effective action, and that ordinary care does not require it." *Id.* at 943, 57 N.W.2d at 227 (quoting *Walker*, 45 S.E.2d at 902).

Our courts have also concluded the continuing storm doctrine relieves a land possessor of the duty to remove or ameliorate the natural accumulation of snow or ice in less severe circumstances. In *Hovden v. City of Decorah*, we concluded the defendant was entitled to judgment notwithstanding the verdict when "a trace of snow was recorded" on the

day of the plaintiff's fall and "[i]t had been snowing off and on all morning." 261 Iowa 624, 628, 155 N.W.2d 534, 537 (1968), *superseded by statute*, 1984 Iowa Acts ch. 1002, § 1. Yet in this case "it was still snowing" at the time the plaintiff fell, and "[t]he snow continued until after the accident." *Id.* at 628–29, 155 N.W.2d at 537–38. In *Rochford*, the court of appeals concluded "that the continuing storm doctrine—or 'storm in progress' doctrine—'is not limited to situations where blizzard conditions exist; it also applies in situations where there is some type of less severe, yet still inclement winter weather.'" 845 N.W.2d at 718 (quoting *Glover v. Botsford*, 971 N.Y.S.2d 771, 772 (App. Div. 2013)).

Although the weather conditions in *Hovden* and *Rochford* were not as severe as those in *Reuter*, there was evidence establishing the weather conditions were ongoing and were sufficiently severe that efforts to remove or ameliorate the natural accumulation of snow or ice would have been inexpedient or impracticable. *See Hovden*, 261 Iowa at 629–30, 155 N.W.2d at 538 (stating the "snow continued until after the accident" and would have made it "inexpedient and impracticable" for the defendant to clear the sidewalk (quoting *Walker*, 45 S.E.2d at 902)); *Rochford*, 845 N.W.2d at 717 ([T]he undisputed facts of the weather event rendered it inexpedient and impractical for [the defendant] to have taken action before [plaintiff's] fall to remove the ice from the sidewalk and . . . it was not necessary to decide whether the facts fit the definition of a 'storm.'").

When the record is undisputed that meaningful snow or ice accumulation had begun and was ongoing at the time of the accident, then it may be appropriate to hold the land possessor had no duty as a matter of law. Thus, in *Reuter*, *Hovden*, and *Rochford*, the court was able to determine, as a matter of law, the land possessor owed no duty because there was an ongoing accumulation of snow or ice.

However, where, as here, a factual dispute exists as to whether there was a continuing storm, the appropriate course is to instruct the jury on the doctrine and leave the fact-finding to the jury. *See* Restatement (Third) § 7 cmt. *b*, at 79. ("When resolution of disputed adjudicative facts bears on the existence or scope of a duty, the case should be submitted to the jury . . . ."); *see also Kraus*, 558 A.2d at 243–44 ("Our decision, however, does not foreclose submission to the jury . . . of the factual determinations of whether a storm has ended or whether a plaintiff's injury has resulted from new ice or old ice when the effects of separate storms begin to converge."); *Laine*, 177 A.3d at 1230 ("[T]he reasonableness of any delay [in clearing accumulations of ice and snow] should be treated as any question of fact."); *Buchanan v. TD Bank, N.A.*, No. K15C–12–020 RBY, 2016 WL 3621102, at *2 (Del. Super. Ct. June 28, 2016) (denying summary judgment where there were "questions of fact remaining regarding the weather conditions at the time and location of the accident"); *Jefferson v. Long*, No. 388/10, 2012 WL 3854864, at *4 (N.Y. Sup. Ct. Aug. 31, 2012) ("[N]otwithstanding defendant's expert's conclusion, courts have held that trace precipitation does not constitute an ongoing storm. Thus, there is a question of fact as to whether or not there was a storm in progress at the time of plaintiff's accident." (Footnote omitted.) (Citation omitted.)). Where the matter is submitted to the finder of fact, "the plaintiff bears the burden of proof on facts necessary to establish a duty." Restatement (Third) § 7 cmt. *b*, at 79.

Thus, for example, in *Wailes*, the court of appeals concluded the district court correctly gave a jury instruction on the continuing storm doctrine when the plaintiff challenged the timing of the defendant's snow removal. 861 N.W.2d at 267–68. In *Alcala*, we vacated a plaintiff's verdict and remanded the matter for new trial due to several instructional errors.

880 N.W.2d at 700, 710–11 (majority opinion). In discussing the application of the continuing storm doctrine on the facts of that case, we recognized the issue was potentially a question of adjudicative fact for the jury. *See id.* at 711 ("Because we have determined that the instructional errors discussed above require a new trial, we need not decide whether the district court erred by refusing Marriott's requested instruction on the continuing-storm doctrine. We recognize the issue will arise again on remand if Marriott renews its request for an instruction on the doctrine."). The weather conditions in *Alcala* were similar to those here, including "fog or mist," "freezing rain or drizzle," and "trace amounts of precipitation." *Id.* at 702.

Here, the summary judgment record does not establish as a matter of law that there was an ongoing accumulation of snow or ice. The parties dispute the weather conditions at the location in question. The weather reports show at best only trace amounts of precipitation on and off throughout the day in question. Indeed, the weather conditions were so mild that Burkett concluded it was not even necessary to contact Stonehaven's snow-removal contractors to take action. On this record, the district court erred in granting the defendant's motion for summary judgment.

## IV.

For these reasons, we reverse the judgment of the district court, and we remand this matter for further proceedings.

**REVERSED AND REMANDED.**

All justices concur except Appel, J., who concurs in part and dissents in part.

**APPEL, Justice (concurring in part and dissenting in part).**

I concur in the result in this case, but I dissent on the question of the continued viability of the archaic, unworkable, and outmoded continuing storm doctrine. Indeed, the slicing and dicing in this case is an excellent example of why the doctrine should be abandoned.

At the outset, I agree that section 7 of the Restatement (Third) of Torts does not preclude public policy exceptions to general rules of tort liability. Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7 (Am. Law Inst. 2010) [hereinafter Restatement (Third)]. But public policy exceptions under section 7(b) of the Restatement (Third) are necessarily antidemocratic because they rest on the view that our citizen jurors are simply incapable of applying traditional tort law in certain circumstances, or alternatively, that some special interest group or special activity is so important in the eyes of judges, that the ordinary application of tort rules of accountability cannot be enforced.

While the Restatement (Third) expressly permits such public policy exceptions, such exceptions should be few and far between and only where public policy is so compelling that the question of liability cannot be entrusted to juries or fact-finding judges. *See, e.g., John B. v. Super. Ct.,* 137 P.3d 153, 161–62 (Cal. 2006) ("Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of a statutory provision declaring an exception . . . *no such exception should be made unless clearly supported by public policy.*" (emphasis added) (quoting *Rowland v. Christian,* 443 P.2d 561, 564 (Cal. 1968))). In addition, even when public policy exceptions might be justifiable, they must be vigorously policed to

prevent them from escaping their narrow confines. The fact that the presence of a very fine mist is deemed by some to be sufficient to trigger the continuing storm doctrine shows how elastic immunity doctrines may become.

The so-called continuing storm doctrine is based on the proposition that jurors are incapable of sorting through negligent handling of snow and ice by premises owners from situations where it would be unreasonable to expect a property owner from abating hazards. Apparently, the fear is that jurors in Iowa would hold landlords liable when they could not reasonably be considered at fault. But in Iowa, just about everybody, at some time in their lives, has shoveled snow, put down ice melt, and stared out the window wondering what next steps to take. I see no reason to believe that Iowa jurors lack the capability to evaluate the reasonability of a premises owner's actions during inclement conditions.

The continuing storm doctrine takes that judgment away from jurors, puts the judge in the driver's seat, and then irrationally gives the judge a limited toolbox to decide whether to take the case away from the jury. The judge is to make arcane determinations, such as whether a storm was in progress, whether it was continuous, and whether there was a pause or break in the action sufficient to permit a lawsuit to proceed. The casebooks groan with judicial efforts to make these fine distinctions, based on slight variation in temperature, whether the rain was icy or not, whether there was rain or mist, and whether there was actually a pause or simply a lessening of the inclement weather. *See generally, Landlord's Liability to Tenant or Tenant's Invitee for Injury or Death Due to Ice or Snow in Areas or Passageways Used in Common by Tenants*, 49 A.L.R.3d 387 (Originally published in 1973) (containing 103 pages of slice and dice case squibs); *Landlord's Liability for Injury Caused by Accumulation of Snow*

*and Ice on Common Areas of Leased Premises*, 88 Am. Jur. Proof of Facts 3d 307 (Originally published in 2006) (containing 87 similar pages).

What is astonishingly not considered under the continuing storm doctrine is the ability of the landowner to abate hazards. Apparently, the wide availability of snow removal implements with climate controlled cabs, powerful snow blowers, buckets of ice melt and convenient applicators, and other snow removal devices is completely irrelevant on the question of liability under the continuing storm doctrine. A storm is a storm is a storm, apparently, regardless of the ability of the landowner to abate the hazard. Such an approach is nonsensical. As noted by a Massachusetts case in a snow and ice context,

> [T]oday a landlord, armed with an ample supply of salt, sand, scrapers, shovels and even perhaps a snow blower, can acquit himself quite admirably as he takes to the common passageways to do battle with the fallen snow, the sun-melted snow now turned to ice, or the frozen rain.

*Papadopoulos v. Target Corp.*, 930 N.E.2d 142, 152 (Mass. 2010) (quoting *Fuller v. Hous. Auth. of Providence*, 279 A.2d 438, 440 (R.I. 1971)).

Further, the nature of the property use is irrelevant under our current method of examination. The fact that the landlord was aware that senior citizens used a sidewalk, for instance, during evening hours is completely irrelevant if there is some ongoing precipitation. Really? The walkway to a senior citizen center during a period of time when foot traffic can be expected is treated the same as a walkway to nowhere in the dead of winter that is rarely traversed by anyone.

Yes, the continuing storm doctrine remains the majority rule, but there is a better-reasoned minority position. For example, in *Budzko v. One City Center Associates Limited Partnership*, 767 A.2d 310 (Me. 2001), the Maine Supreme Court rejected the rule as inconsistent with general

tort duty. *Id.* at 314 n.3. Similarly, appellate courts in the states of Indiana, Kentucky, Michigan, Nebraska, and Washington have rejected the continuing storm doctrine. *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 317 (Ind. Ct. App. 2014); *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 299–300 (Ky. 2015); *Lundy v. Groty*, 367 N.W.2d 448, 449–50 (Mich. Ct. App. 1985); *Danner v. Myott Park, Ltd.*, 306 N.W.2d 580, 583 (Neb. 1981); *Cramer v. Van Parys*, 500 P.2d 1255, 1262 (Wash. Ct. App. 1972).

Of course, the above cases do not make the landlord an insurer, a slogan frequently recited as received wisdom in support of the continuing storm doctrine. As noted by the Kentucky Supreme Court,

> It is true that no one controls the weather; but neither is anyone reasonably expected to do so. A landowner is held only to reasonable conduct. The gravamen of a tort claim has always been that harm has come to a plaintiff because of the *unreasonable* conduct of the tortfeasor. Such conduct need only be the conduct that the ordinary person would not do under the same circumstances, in order to be tortious.

*Carter*, 471 S.W.3d at 299–300.

Earlier this year, in April of 2020, a New Jersey appellate court took the time to step back and carefully consider the merits of the continuing storm doctrine. In *Pareja v. Princeton International Properties*, ___ A.3d ___, 2020 WL 1764922 (N.J. Super. Ct. App. Div. Apr. 9, 2020), the court considered the question of whether the continuing storm doctrine relieves commercial landowners from rendering their property safe while sleet or snow is falling. *Id.* at *1. The *Pareja* court rejected the application of the continuing storm doctrine. *Id.* The opinion thoroughly explores the issue and, as such, is worth quoting at length.

Early on, the *Pareja* court announced its essential holding,

> [A] commercial landowner has a duty to take reasonable steps to render a public walkway abutting its property—covered by

> snow or ice—reasonably safe. Such a duty—to remove or reduce a foreseeable hazard—cannot be fulfilled by always waiting to act until after a storm ends, regardless of the risk imposed to invitees and pedestrians.

*Id.* Like the Kentucky Supreme Court in *Carter*, the *Pareja* court also addressed the argument that abolition of the continuing storm rule and application of ordinary tort rules renders the landlord an insurer. *Id.* at *6. The *Pareja* court stated that,

> [W]e are not, as counsel say, imposing on the owner of the premises a burden physically impossible to discharge or one which makes the owner the guarantor of the safety of his tenants and their guests. We do not hold there was an absolute duty to provide a safe entrance or to keep it safe by extraordinary or unusual means. If the storm made the spreading of sand or ashes or some other preventive impossible or even useless, no reasonable person would expect it to be done.

*Id.* (quoting *Pessagno v. Euclid Inv. Co.*, 112 F.2d 577, 579 (D.C. Cir. 1940)).

In justifying their rejection of the continuing storm doctrine, the *Pareja* court noted the rigidity of the ongoing storm doctrine and its failure to consider key factors undermines the policy of tort law. *Id.* at *8. In that way, the court found,

> Imposing a rigid judicial declaration that all action would always be useless or excessive, ignores the main aim of tort law, and overlooks situations where a commercial landowner's ordinary effort to remove or reduce snow and ice hazards would be reasonable. To permit commercial landowners under every circumstance to wait until the end of a storm before taking any reasonable precautions, or to attempt removing or reducing known precipitation hazards, would arbitrarily create a rigidity in the law inconsistent with the innumerable variables that are possible.

*Id.*

Finally, the *Pareja* court listed a number of factors that a jury might consider in determining the reasonableness of a commercial owner's conduct. According to the *Pareja* court, a jury could consider

> (1) Whether any action would be inexpedient or impractical; (2) the extent of the precipitation, including the amount of snow or ice accumulation; (3) the timing of the precipitation, whether it's day or night; (4) the nature of the efforts, if any, to prevent, remove, or reduce snow or ice accumulation, especially whether conditions were so hazardous as to make it unsafe for the landowner or any contractor to venture out in the elements; (5) the minimal usage consequent on a "closed" facility in contrast to a normal work week; (6) the number of individuals expected to use the public sidewalk, premises, and the area in need of attention; (7) the past, current, and anticipated weather conditions, including but not solely dependent on reliable weather predictions, and the practicality of reasonable safety measures or methods of ingress or egress; and (8) any other relevant factors.

*Id.* at *10.

In my view, the continuing storm doctrine is an approach to tort law that has long outlived whatever usefulness it might have once had. I would abandon it and allow tort claims involving snow and ice be treated like any other claim. A brittle, categorical doctrine that relies on fine distinctions and excludes consideration of important factors has little to nothing to commend it. Our citizen jurors are perfectly capable of considering prosaic snow and ice issues without the unnecessary intervention of judges with poorly designed tools that prevent accountability in tort in cases where it should reasonably be imposed.

For the above reasons, I would reverse and remand the case for trial on the merits.