NORMA DANNER, APPELLANT, V.
MYOTT PARK, LTD., APPELLEE.

306 N.W.2d 580

Filed June 5, 1981. No. 43401.

John J. Hanley for appellant.

Ronald H. Stave and J. Michael Coffey of Sodoro, Johnson, Daly, Stave, Cavel & Coffey for appellee.

Heard before KRIVOSHA, C.J., McCOWN, WHITE, and HASTINGS, JJ., and MORAN, District Judge.

MORAN, District Judge.

This is an appeal by the plaintiff, Norma Danner, from a judgment for the defendant, Myott Park, Ltd., a limited partnership, entered on a jury verdict in a personal injury case. Plaintiff's motion for a new trial was overruled.

The principal error assigned is on an instruction given by the trial court.

Plaintiff was an overnight guest in her daughter's apartment in the 217-unit Myott Park apartment complex in Omaha, Nebraska, owned by the defendant. The complex was of wood frame construction. Wood stairways with wood railings provided the only access to the apartment. The stairway was open to the elements, and the steps (described as steep) rose from ground level to a landing which served two apartments. Plaintiff, age 43, arrived at the apartment the evening of November 8, 1977. She recalled that it could have been raining. Climatological data from Eppley Airfield disclosed rain at midnight and snow and blowing snow at successive 3-hour intervals until noon of November 9th. Winds during that time varied from 17 to 25 knots per hour and the temperature dropped from 40 degrees at midnight to 33 degrees at noon. Plaintiff left the apartment at 2:30 p.m. on November 9th to telephone her employer to determine whether she should report for work because of the weather. Friends, who by prearrangement were to pick her up to take her to work, arrived at the apartment parking lot, and one saw her "flying through the air" down the stairway. She landed in a sitting position at the foot of the stairway and was injured. Witnesses described the stairway and railings as snowy and icy. Plaintiff testified she never looked outside before leaving the apartment but learned of the snow from television news reports. Schools were closed that day. She was familiar with the steps. She did not look down as she proceeded down the stairway. The resident manager testified it was snowing when she arrived for work shortly before 9 a.m. on November 9th. Winds were high and the snow was beginning to drift. Snow continued until sometime after 2 p.m. When the manager arrived for work she began removing snow around the office. By 9 a.m. the entire three-man maintenance crew was shoveling snow. A maintenance employee testified he salted the steps with chemical melt in the morning between 9:45 and 11:30 a.m. The manager testified that she observed the steps in

question that day, that they had been shoveled, and that she ordered the application of chemical melt after the shoveling of the steps. She did not verify compliance with her order. The witnesses who came to pick up plaintiff testified it was not snowing when they arrived at the complex. One witness returned the following day and photographed the stairway. Two photographs were in evidence. Snow is visible on the lower steps. Small patches of snow appear on the upper steps. He testified that the scene depicted was at least as bad as it was the day earlier at the time of the fall. The other witness testified the scene substantially reflected the condition at the time of the accident. The apartment lease included the requirement in Neb. Rev. Stat. § 76-1419 (1) (c) (Reissue 1976) that the landlord keep all common areas of the premises in a clean, safe condition.

The trial court instructed the jury on issues of negligence and contributory negligence. Instruction No. 8 reads:

"Where a landlord reserves a portion of the leased premises for the common use of its tenants, the landlord is required to keep the portion so reserved in a reasonably safe condition for its tenants and their visitors.

"A landlord is not subject to liability for bodily harm to its tenants' visitors on account of a condition of that part of the premises used in common by its tenants and under the landlord's possession and control unless:

"1. The condition created an unreasonable risk of harm to its tenants and their visitors; and

"2. The landlord knew, or in the exercise of reasonable care should have known, of the dangerous condition and the risk involved therein; and

"3. The landlord was afforded a reasonable time within which to make the condition safe or to give to its tenants and their visitors adequate warning to enable such persons to avoid harm; and

"4. The landlord in the exercise of reasonable care could have made the condition safe.

"As used in this instruction, the term 'unreasonable

risk of harm' means a risk that a reasonable person, under all the circumstances of the case, would not allow to continue."

This instruction was approved in *Schwab v. Allou Corp.*, 177 Neb. 342, 128 N.W.2d 835 (1964). Compare Restatement (Second) of Property § 17.3 (1977).

The error assigned in this court is in giving instruction No. 9 which was the trial court's modification of a similar instruction requested by defendant. Instruction No. 9 reads: "You are instructed that a landlord may, in the absence of unusual circumstances, if any you find, without violating its duty to exercise reasonable care for the safety of a tenant or a tenant's visitors, await the end of a snow storm and a reasonable time thereafter before removing ice and/or snow from outside entrances, walks, platforms or steps."

It is apparent that this instruction takes from the jury a factor which it might consider in paragraph 3 of instruction No. 8.

Plaintiff's theory is that defendant either failed to adequately clean the stairway or overlooked it in its snow- and ice-cleaning operations. Defendant contends that it cleaned the stairway. It is possible that additional snow accumulated after the stairway was cleared. If so, defendant contends that it was proper to give instruction No. 9. It is difficult to understand how this instruction could apply to the facts here because all of the evidence is that defendant began clearing operations at 9 a.m.

The propriety of the challenged instruction has never been before the court in the past. The weight of authority appears to support it. See *Mattson v. St. Luke's Hospital*, 252 Minn. 230, 89 N.W.2d 743 (1958).

We believe, however, that the instruction creates more problems than it purports to solve. The jury was adequately instructed in this respect in paragraph 3 of instruction 8. It was for the jury to determine under the evidence whether defendant was afforded a reasonable time to make the condition safe or give adequate warn-

ing. One does not have to reflect long to think of situations where giving the challenged instruction results in injustice. This was the position of the court in *Cramer v. Van Parys*, 7 Wash. App. 584, 500 P.2d 1255 (1972), where it affirmed the trial court's refusal to give the jury a similar instruction. In that case the court said at 593, 500 P.2d at 1262: "Whether a landlord was negligent in failing to remove snow from common areas is best left to the jury. In weighing the relevant circumstances, a jury might consider the nature and size of the apartment, the age and number of tenants expected to use the slippery area, the size of the area in need of cleaning, the current and anticipated weather conditions and the practicality of other safety measures or methods of ingress and egress. In weighing these factors, a jury might hold the urban landlord of a large building to a different standard of care than the rural landlord of a small building who does not live in the building. To permit any landlord under any circumstance to always wait until the end of a storm before removing snow would create a rigidity in the law inconsistent with the innumerable variables that are possible."

Defendant distinguishes the *Cramer* case because the instruction here added the phrase "in the absence of unusual circumstances, if any you find." One may inquire what are unusual circumstances, and should not a trial court define them. Circumstances are what a jury considers when determining the reasonableness of conduct.

We disapprove of the instruction. Giving it in this case was particularly prejudicial because the jury could have found that improper clearing of snow and ice, or overlooking the cleaning of the stairs, was of no consequence because defendant had a right to wait until the end of the storm before doing anything at all.

We have held that a jury instruction which misstates issues or defenses and has a tendency to confuse the jury is erroneous. *Bartels v. Retail Credit Co.*, 185 Neb.

304, 175 N.W.2d 292 (1970); *Zimmerman v. Continental Cas. Co.*, 181 Neb. 654, 150 N.W.2d 268 (1967).

Defendant contends that in any event it was entitled to a directed verdict in its favor under principles announced in *Nance v. Ames Plaza, Inc.*, 177 Neb. 88, 128 N.W.2d 564 (1964), in that the plaintiff had knowledge or should have had knowledge of the condition comparable to that of the defendant, and thus the defendant could not be guilty of negligence. This case is distinguishable. Here, plaintiff had no choice but to use the only means available to leave the apartment. As her daughter's guest, plaintiff had the right to assume that defendant would comply with its contractual duty to keep the common stairway in a clean, safe condition. *Robinson v. Belmont Co.*, 94 Colo. 534, 31 P.2d 918 (1934).

During oral argument, defendant abandoned its claim that plaintiff was contributorily negligent as a matter of law.

REVERSED AND REMANDED FOR A NEW TRIAL.