SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Angel Alberto Pareja v. Princeton International Properties (A-4-20) (084394)**

**Argued February 1, 2021 -- Decided June 10, 2021**

**FERNANDEZ-VINA, J., writing for the Court.**

The Court determines whether commercial landowners owe a duty to clear snow and ice from their property during a storm. The Court considers the adoption of the ongoing storm rule, under which a landowner does not have a duty to remove snow or ice from public walkways until a reasonable time after the cessation of precipitation.

In January 2015, plaintiff Angel Alberto Pareja was walking to work when he slipped on ice, fell, and broke his hip. The sidewalk area on which he fell was on property owned and managed by defendant Princeton International Properties, Inc. (Princeton International). The night before, a wintry mix of light rain, freezing rain, and sleet began to fall. Around the time of his fall, light rain and pockets of freezing rain were falling. Pareja's expert opined that Princeton International could have successfully reduced the hazardous icy condition by pre-treating the sidewalk.

Pareja filed a complaint, and the trial court granted summary judgment to Princeton International. The Appellate Division reversed and held that Princeton International had a duty of reasonable care to maintain the sidewalk even when precipitation was falling. 463 N.J. Super. 231, 235 (App. Div. 2020). The Court granted certification. 244 N.J. 168 (2020).

**HELD:** The limiting principles established in the Court's precedent warrant the adoption of the ongoing storm rule. Commercial landowners do not have a duty to remove the accumulation of snow and ice until the conclusion of the storm, but unusual circumstances may give rise to a duty before then. There are two exceptions that could impose a duty: if the owner's conduct increases the risk, or the danger is pre-existing.

1. Originally, the common law provided no liability for landowners for the condition of a sidewalk and no duty to keep the sidewalk free of snow and ice. In Stewart v. 104 Wallace St., Inc., the Court carved out an exception for commercial landowners, holding that they "are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." 87 N.J. 146, 157 (1981). In Mirza v. Filmore Corp., the Court extended

1

that duty to expressly include the "removal or reduction of the hazard of snow and ice." 92 N.J. 390, 400 (1983).  Mirza and later cases discuss the imposition of a duty to remove snow and ice only after the cessation of the hazardous precipitation; none opine on the imposition of a duty before that point.  (pp. 12-15)

2.  The Appellate Division imposed a duty for those commercial landowners who "after actual or constructive notice, [fail] to act in a reasonably prudent manner to remove or reduce the foreseeable hazard."  463 N.J. Super. at 251.  Such a duty does not consider the size, resources, and ability of individual commercial landowners or recognize that what may be reasonable for larger commercial landowners may not be reasonable for smaller ones.  The Court declines to impose a duty that cannot be adhered to by all.  The premise of the ongoing storm rule is that it is categorically inexpedient and impractical to remove or reduce hazards from snow and ice while the precipitation is ongoing.  The Court agrees, and its decision aligns with the majority rule.  (pp. 16-17)

3.  Under the ongoing storm rule, commercial landowners do not have a duty to remove snow and ice until the conclusion of the storm, but unusual circumstances may give rise to a duty before then.  First, commercial landowners may be liable if their actions increase the risk to pedestrians and invitees on their property.  Second, a commercial landowner may be liable where there was a pre-existing risk on the premises before the storm.  The Court's rule does not preclude a jury from hearing questions of fact such as when the storm concluded or whether the accumulation of snow or ice was from a previous storm.  (pp. 17-19)

4.  The trial court was correct in granting summary judgment to Princeton International. Princeton International owes Pareja a duty only in unusual circumstances, none of which are present here.  Princeton International took no action to increase Pareja's risk, and the record shows that the ice on the sidewalk was not a pre-existing condition.  (p. 19)

**The judgment of the Appellate Division is REVERSED.**

**JUSTICE ALBIN, dissenting,** would affirm the Appellate Division, which rejected the ongoing storm rule, and hold that "a commercial landowner has a duty to take reasonable steps to render a public walkway abutting its property -- covered by snow or ice -- reasonably safe, even when precipitation is falling."  463 N.J. Super. at 251-52. Stressing that the type of winter weather event matters, Justice Albin states that although snow removal would be impracticable during an ongoing blizzard, the same could not be said if there were an inch or two of snow and continuing light flurries, and the landowner could render the sidewalk safe with little effort or expense.  Justice Albin would join the considerable number of jurisdictions that have rejected the ongoing storm rule.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON join in JUSTICE FERNANDEZ-VINA's opinion.  JUSTICE ALBIN filed a dissent, in which JUSTICE PIERRE-LOUIS joins.**

2

# SUPREME COURT OF NEW JERSEY
## A-4 September Term 2020
### 084394

Angel Alberto Pareja,

Plaintiff-Respondent,

v.

Princeton International Properties
and Lowe's Landscaping and Lawn
Maintenance, LLC,

Defendants,

and

Princeton International Properties,

Defendant/Third-Party
Plaintiff-Appellant,

v.

Lowe's Landscaping and
Lawn Maintenance, LLC,

Third-Party Defendants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
463 N.J. Super. 231 (App. Div. 2020).

| Argued | Decided |
|---|---|
| February 1, 2021 | June 10, 2021 |

1

William S. Bloom argued the cause for appellant (Methfessel & Werbel, attorneys; William S. Bloom, of counsel and on the briefs, and James V. Mazewski, on the briefs).

David P. Corvasce argued the cause for respondent (Garces, Grabler & Lebrocq, attorneys; David E. Rehe, on the brief).

Mark R. Scirocco argued the cause for amicus curiae New Jersey Defense Association (Law Offices of Robert A. Scirocco, attorneys; Mark R. Scirocco, on the brief).

Eric G. Kahn argued the cause for amicus curiae New Jersey Association for Justice (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Eric G. Kahn and Annabelle M. Steinhacker, of counsel and on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

This case calls on the Court to determine whether commercial landowners owe a duty to clear snow and ice from their property during a storm. For the first time, this Court considers the adoption of the ongoing storm rule, under which a landowner does not have a duty to remove snow or ice from public walkways until a reasonable time after the cessation of precipitation.

Angel Alberto Pareja was walking to work in the early morning hours when he slipped on ice and fell. It had been precipitating that morning in below freezing temperatures. The sidewalk area on which he fell was located

2

on property owned and managed by Princeton International Properties, Inc. (Princeton International).

The trial court granted summary judgment to Princeton International, finding that the ongoing storm rule applied and that Princeton International therefore owed no duty to maintain its sidewalks during the precipitation. The Appellate Division reversed, rejecting the ongoing storm rule, and holding that Princeton International had a duty of reasonable care to maintain the sidewalk even when precipitation was falling. Pareja v. Princeton Int'l Props., 463 N.J. Super. 231, 235 (App. Div. 2020).

We disagree with the Appellate Division's holding and decline to adopt the Appellate Division's articulation of the commercial landowner's duty of ordinary and reasonable care. Rather, we find that the standard established in our precedent supports the adoption of the ongoing storm rule. In addition to adopting the rule, we also recognize two exceptions that could impose a duty: if the owner's conduct increases the risk, or the danger is pre-existing.

Therefore, we reverse the judgment of the Appellate Division.

I.

A.

We begin by summarizing the pertinent facts and procedural history. On January 12, 2015, around 8 a.m., Angel Alberto Pareja drove to work in light

3

rain. He parked across the street from the building where he worked and walked along the sidewalk. Snow cleared from an earlier storm was piled up along the edges of the sidewalk. Pareja's path required him to walk over the driveway apron, the section of sidewalk that connects the driveway to the public road. That apron was owned by Princeton International. Temperatures that morning were below freezing, and, unable to see ice on the driveway apron due to the rain, Pareja stepped directly onto it, fell, and broke his hip.

The following details of the weather conditions for the morning of January 12 were established by consistent meteorology reports submitted by each party. The National Weather Service issued a Winter Weather Advisory the previous day, January 11, effective from 1 a.m. through 10 a.m. on January 12. Between 1:30 a.m. and 2 a.m. on the morning of January 12, a wintry mix of light rain, freezing rain, and sleet began to fall at temperatures between thirty-three to thirty-four degrees. Between 7 a.m. and 8 a.m., directly at and before the time of Pareja's fall, "light rain and pockets of freezing rain were falling," and the temperature was about thirty-two to thirty-three degrees.

The parties' reports differed, however, with respect to the location of the ice on which Pareja fell. The report presented by Pareja concluded that the icy condition was isolated, while the report presented by Princeton International

4

concluded that the icy condition was found area-wide as a product of the ongoing freezing rain.

Neither Princeton International's maintenance supervisor, Sam Alizio, nor its vice president, Arieh Feigenbaum, could specifically recall whether the corporation had pre-treated the sidewalks that day. Given that the property contains two apartments and two offices, the corporation would generally prepare for storms in that way. It employs Lowe's Landscaping & Lawn Maintenance, LLC (Lowe's Landscaping), for snow and ice removal services including plowing, snow removal, salting, and pre-treatment.

Alizio was responsible for ensuring that snow removal services were being performed adequately after a storm, and he would direct further services if inspection revealed deficiencies in the snow removal. Alizio stated that he was near the property on the morning of January 12 and had noticed the slippery conditions, but he could not remember if Lowe's Landscaping had treated the sidewalks. And while Feigenbaum would generally watch the Weather Channel and alert Lowe's Landscaping of expected storms so they could address any wintry conditions, he did not recall informing Lowe's Landscaping about the conditions on that day.

In an engineering report of the accident presented by Pareja, an expert opined that Princeton International could have successfully reduced the

5

hazardous icy condition by pre-treating the sidewalk with standard anti-icing and de-icing materials. The expert stated, first, that Princeton International "knew or should have known" about the Winter Weather Advisory that was in effect because it was issued more than twenty-four hours before the accident. Second, the expert concluded that the sidewalk was in a "hazardous condition" on the day of the accident due to untreated ice on the surface. And finally, the expert concluded that Princeton International failed to use anti-icing, de-icing, or abrasive materials such as sand to make the sidewalk safe.

Pareja's engineering expert also addressed a local ordinance for the Borough of Princeton, section 28-16, which requires landowners to remove snow and ice from sidewalks -- defined in the ordinance to "include the paved area between the curb and right-of-way line at driveways commonly known as a 'driveway apron.'" The ordinance specifically provides for the removal of snow and ice within twenty-four hours of the conclusion of the hazard-causing precipitation. When such removal is impractical, it requires the owner to thoroughly cover the area with sand, ashes, or rock salt. The report explained that nothing in the ordinance addressed the responsibility of the landowner before the cessation of the precipitation.

6

B.

Pareja filed a complaint against Princeton International, which then filed a third-party complaint against Lowe's Landscaping. Pareja later amended his complaint to additionally bring a claim against Lowe's Landscaping.

Both Lowe's Landscaping and Princeton International moved for summary judgment. The trial court granted Lowe's Landscaping's unopposed motion, noting that there was no basis for imposing liability. It also granted Princeton International's motion, finding that Princeton International did not owe a duty to Pareja.

The Appellate Division reversed the trial court's grant of summary judgment to Princeton International, finding that there were genuine issues of material fact as to whether Princeton International had actual or constructive notice of the dangerous condition and whether Princeton International had acted reasonably. Pareja, 463 N.J. Super. at 253-54. In doing so, the court rejected the ongoing storm rule. Instead, it held that "a commercial landowner has a duty to take reasonable steps to render a public walkway abutting its property -- covered by snow or ice -- reasonably safe, even when precipitation is falling." Id. at 251. The court clarified that such liability would arise "only if, after actual or constructive notice, [a commercial landowner] fails to act in

7

a reasonably prudent manner to remove or reduce the foreseeable hazard."
Ibid.

In determining whether to impose a duty of reasonable care on commercial landowners, the court engaged in an analysis of the factors established in Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993). Id. at 249-51. The court found all of the Hopkins factors weighed in favor of imposing a duty of reasonable care. Ibid. To assist the jury in assessing whether a commercial landowner's conduct was reasonable, the court gave a list of factors to consider:

> (1) Whether any action would be inexpedient or impractical;
>
> (2) the extent of the precipitation, including the amount of snow or ice accumulation;
>
> (3) the timing of the precipitation, whether it's day or night;
>
> (4) the nature of the efforts, if any, to prevent, remove, or reduce snow or ice accumulation, especially whether conditions were so hazardous as to make it unsafe for the landowner or any contractor to venture out in the elements;
>
> (5) the minimal usage consequent on a "closed" facility in contrast to a normal work week;

8

(6) the number of individuals expected to use the public sidewalk, premises, and the area in need of attention;

(7) the past, current, and anticipated weather conditions, including but not solely dependent on reliable weather predictions, and the practicality of reasonable safety measures or methods of ingress or egress; and

(8) any other relevant factors.

[Id. at 252.]

This Court granted Princeton International's petition for certification. 244 N.J. 168 (2020). We also granted the motions of the New Jersey Association for Justice (NJAJ) and the New Jersey Defense Association (NJDA) to participate as amici curiae.

II.

A.

Princeton International submits that this Court has repeatedly expressed the principles embodied by the ongoing storm rule and urges us to expressly adopt it here. It argues that the Appellate Division "fundamentally misconstrued" the ongoing storm rule as arbitrary when, in fact, the rule reflects the commonsense recognition that compelling landowners to try to prevent the accumulation of snow and ice on commercial sidewalks during the pendency of a winter weather event would be impractical and inefficient.

9

B.

Amicus curiae NJDA aligns itself with Princeton International's position, emphasizing that adopting the ongoing storm rule would relieve commercial landowners of the duty to undertake "Sisyphean" snow and ice removal efforts during a storm, which could be hazardous to the health and safety of the landowner as well as futile. It also argues that the rule adequately serves tort principles because, while a storm is ongoing, pedestrians are on notice of dangerous conditions.

C.

In Pareja's view, on the other hand, the Appellate Division's rejection of the ongoing storm rule is directly in line with this Court's precedent. He submits that the rule created by the Appellate Division properly focuses on the reasonableness of the landowner's actions and still internally considers whether action during a storm may be "inexpedient or impractical," a major concern of Princeton International. Pareja contends that the categorical nature of the ongoing storm rule would encourage inaction by the landowner even in situations where such action was reasonable and feasible.

D.

Amicus curiae NJAJ echoes Pareja's position, encouraging this Court to reject the ongoing storm rule in favor of a duty of reasonable care. It argues

that adopting the rule would conflict with precedent, asserting that this Court has shifted away from bright-line rules and has focused on balancing tests that address a reasonableness standard instead. NJAJ points out that a duty of reasonable care on commercial landowners is more than appropriate since they both invite the public onto their properties and have full control over the properties' conditions.

## III.

### A.

When reviewing a grant of summary judgment, this Court applies the same standard governing the trial court and considers "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Summary judgment should not be granted unless the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). In questions of law, be it common law or a statute, our review is de novo. Maison v. N.J. Transit Corp., 245 N.J. 270, 286 (2021).

11

B.

We begin by briefly reviewing our case law on sidewalk liability and a landowner's duty to remove snow and ice. While none of these cases directly address the ongoing storm rule, they nevertheless guide our decision.

Originally, the common law provided no liability for commercial or residential landowners "for the condition of a sidewalk caused by the action of the elements or by wear and tear incident to public use." Qian v. Toll Bros. Inc., 223 N.J. 124, 135 (2015) (quoting Yankho v. Fane, 70 N.J. 528, 532 (1976), overruled in part by Stewart v. 104 Wallace St., Inc., 87 N.J. 146 (1981)). This included "no duty to keep the public sidewalk adjoining their premises free of snow and ice." Ibid. (quoting Skupienski v. Maly, 27 N.J. 240, 247 (1958)).

The Court of Errors and Appeals first considered a case of winter sidewalk hazards in Bodine v. Goerke Co., where the plaintiff slipped on a wintry slush of "rain mixed with . . . snow" at the entrance of the defendant's store. 102 N.J.L. 642, 643 (E. & A. 1926). The Court vacated a jury verdict in favor of Bodine upon finding that there were "no disputed facts [or] inferences from those facts, that could or ought to justify a jury in finding[] that the defendant was guilty of negligence." Id. at 644. That general principle of non-liability, however, did not extend to situations where landowners

12

undertook to remove snow from a public sidewalk and, "through [their own] negligence[,] a new element of danger or hazard, other than one caused by natural forces, [was] added to the safe use of the sidewalk by a pedestrian." Saco v. Hall, 1 N.J. 377, 381 (1949); see Davis v. Pecorino, 69 N.J. 1, 4 (1975) (noting that the creation of a dangerous condition through the landowner's special use of a public walkway also serves as a "well-recognized exception[] to [the] rules of non-responsibility").

In Stewart, we carved out an exception for commercial landowners, holding that they "are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." 87 N.J. at 157. Our rationale for departure from the longstanding rule against liability was both to align with the foundations of tort law -- by providing remedies for seriously injured plaintiffs and creating incentives for landowners to repair deteriorated sidewalks -- and to respond to changing times in recognition that municipalities were no longer solely responsible for the maintenance of sidewalks as they once were. Id. at 155-56.

Two years later in Mirza v. Filmore Corp., we extended the duty recognized in Stewart to expressly include the "removal or reduction of the hazard of snow and ice." 92 N.J. 390, 400 (1983). There, the plaintiff slipped

13

on ice that was covered by snow from storms earlier in the week and the night before. Id. at 393. Reversing the grant of summary judgment to defendant, we held that "maintenance of a public sidewalk in a reasonably good condition may require removal of snow or ice or reduction of the risk, depending upon the circumstances." Id. at 395.

We acknowledged in Mirza that "the duty to remove snow and ice is more important and less onerous than the general duty of maintenance imposed in Stewart," and that removal of the common hazards of snow and ice is "less expensive and more easily accomplished than extensive sidewalk repair." Ibid. In the absence of the non-liability rule, we applied the standard that a commercial landowner's responsibility would arise "only if, after actual or constructive notice, he has not acted in a reasonably prudent manner under the circumstances to remove or reduce the hazard." Ibid.

More recently, we discussed the duty of care a landowner owes to a pedestrian walking on the sidewalk, where a plaintiff slipped and fell on ice on a private sidewalk in a common-interest community. Qian, 223 N.J. at 130. The ice accumulated from freezing rain from a snowstorm earlier in the week and on the morning of the fall. Ibid. We echoed Mirza's sentiments to find that the homeowners' association and its management company had a duty to clear snow and ice from the private sidewalks abutting its land. Id. at 136,

14

141-42.  That liability has not been extended to residential landowners.  Id. at 136; see Luchejko v. City of Hoboken, 207 N.J. 191, 211 (2011).

Significantly, those cases discuss the imposition of a duty on commercial landowners to remove snow and ice only after the cessation of the hazardous precipitation; none opine on the imposition of a duty before that point, which is the crux of this appeal.

## IV.

Applying our precedent to a situation where a storm is ongoing, we hold that commercial landowners do not have the absolute duty, and the impossible burden, to keep sidewalks on their property free from snow or ice during an ongoing storm.  We find instead that the limiting principles established in our precedent warrant the adoption of the ongoing storm rule.

Guided by the ongoing storm rule and the facts of this case, we conclude that Princeton International did not owe Pareja a duty to clear the snow and ice during the storm, and there were no unusual circumstances that would otherwise create such a duty.  We reverse the Appellate Division's decision and find that the trial court was correct in granting summary judgment to Princeton International.

A.

The Appellate Division here imposed a duty of ordinary and reasonable care that would create liability for those commercial landowners who "after actual or constructive notice, [fail] to act in a reasonably prudent manner to remove or reduce the foreseeable hazard." Pareja, 463 N.J. Super. at 251.

But such a duty does not consider the size, resources, and ability of individual commercial landowners or recognize that what may be reasonable for larger commercial landowners may not be reasonable -- or even possible -- for smaller ones. While we trust juries to uphold their duties to evaluate reasonableness, we do not wish to submit every commercial landowner to litigation when it is not feasible to provide uniform, clear guidance as to what would be reasonable.[1] We decline to impose a duty that cannot be adhered to by all commercial landowners.

The alternative to the duty imposed by the Appellate Division is the ongoing storm rule. The premise of the rule is that it is categorically inexpedient and impractical to remove or reduce hazards from snow and ice while the precipitation is ongoing. We agree. Our precedent makes clear, and

_____

[1] The dissent suggests that all a landlord need do to avoid liability is to take such a simple measure as spreading salt. This ignores the diversity of storms a landlord may confront and that measures like spreading salt in a heavy snowstorm or ice storm can be ineffective or even enhance the danger, thus imposing an untenable duty of care on landlords.

16

we reiterate today, that absent unusual circumstances, a commercial landowner's duty to remove snow and ice hazards arises not during the storm, but rather within a reasonable time after the storm. See Qian, 223 N.J. at 135-36; Mirza, 92 N.J. at 395-96; Stewart, 87 N.J. at 157; Bodine, 102 N.J.L. at 644. Given the unreasonableness of removing the accumulation of snow and ice while a storm is ongoing, adopting the ongoing storm rule today is consistent with our case law on sidewalk liability and snow removal.

Our decision today aligns us with the majority rule and ten other states that have adopted the ongoing storm rule. See Dixon v. HC Equities Associates, LP, 241 N.J. 132, 135 (2020) (Albin, J, dissenting). Among those ten states are four of our neighbors -- Connecticut, Kraus v. Newton, 558 A.2d 240, 243 (Conn. 1989); Delaware, Laine v. Speedway, LLC, 177 A.3d 1227, 1228 (Del. 2018); New York, Solazzo v. N.Y.C. Transit Auth., 843 N.E. 2d 748, 749 (N.Y. 2005); and Pennsylvania, Goodman v. Corn Exch. Nat'l Bank & Tr. Co., 200 A. 642, 643-44 (Pa. 1938) -- each of which have climates similar to our own.

Considering our caselaw and balancing the concerns of commercial landowners with the need to provide redress for injured plaintiffs, we state today that, under the ongoing storm rule, commercial landowners do not have a

17

duty to remove the accumulation of snow and ice until the conclusion of the storm, but that unusual circumstances may give rise to a duty before then.

The following unusual circumstances present exceptions to the ongoing storm rule. First, commercial landowners may be liable if their actions increase the risk to pedestrians and invitees on their property, for example, by creating "unusual circumstances" where the defendant's conduct "exacerbate[s] and increase[s] the risk" of injury to the plaintiff. Terry v. Cent. Auto Radiators, Inc., 732 A.2d 713, 717-18 (R.I. 1999). The Supreme Court of Rhode Island held that "unusual circumstances" existed where a defendant "actively increas[ed] . . . [the] risk [of injury] by placing [the plaintiff's] vehicle so far distant and then directing her to make the longer walk over the treacherous icy terrain." Id. at 718. Under those circumstances,

> [t]he defendant, by having removed the vehicle to the rear of its business premises and by having directed the plaintiff to retrieve it from there, had exacerbated and increased the risk of the plaintiff's falling when it required her to walk some one hundred additional feet over snow and ice that had been accumulating on unknown and difficult terrain. She was left with no choice but to do as directed if she wished to retrieve her vehicle.

> [Id. at 717-18.]

Second, a commercial landowner may be liable where there was a pre-existing risk on the premises before the storm. For example, if a commercial

18

landowner failed to remove or reduce a pre-existing risk on the property, including the duty to remove snow from a previous storm that has since concluded, he may be liable for an injury during a later ongoing storm.

Our rule today does not preclude a jury from hearing questions of fact such as, but not limited to, when the storm concluded or whether the accumulation of snow or ice was from a previous storm.

B.

In light of our adoption of the ongoing storm rule and our clarification that a commercial landowner owes no duty during a storm, we find that the trial court was correct in granting summary judgment to Princeton International. Princeton International owes Pareja a duty only in unusual circumstances, none of which we find here. Princeton International took no action to increase Pareja's risk, and the record shows that the ice on the sidewalk was not a pre-existing condition, but rather a result of the ongoing storm.

V.

We reverse the judgment of the Appellate Division.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICE ALBIN filed a dissent, in which JUSTICE PIERRE-LOUIS joins.

19

Angel Alberto Pareja,

Plaintiff-Respondent,

v.

Princeton International Properties
and Lowe's Landscaping and Lawn
Maintenance, LLC,

Defendants,

and

Princeton International Properties,

Defendant/Third-Party
Plaintiff-Appellant,

v.

Lowe's Landscaping and
Lawn Maintenance, LLC,

Third-Party Defendants.

JUSTICE ALBIN, dissenting.

Today, the majority holds that, so long as any precipitation is falling during a "storm," the owner of a commercial building has no duty to take commonsense, practicable, and easy-to-apply measures to render its sidewalks less hazardous. Those who live and work in commercially owned buildings --

or members of the public just passing by -- must traverse the sidewalks in winter weather.  They have no choice but to fulfill the everyday demands of life, going to and from work or shopping, as light precipitation continues.  But as they slip and slide on the icy walkways -- and fall and suffer serious injuries -- the profit-making commercial landowner can choose to do nothing and will face no consequences.  The majority has announced that commercial landowners have no duty to take any reasonable measure to make the sidewalk safe, such as by spreading salt to prevent avoidable accidents and injuries.

The salting of roadways and highways, even as precipitation is falling, evidently is not a futile effort; it is a reasonable public-safety measure to protect motorists from serious and even fatal accidents.  Then why is that not true for pedestrians who must use the sidewalks of commercial landowners?

The majority's adoption of the ongoing storm rule is not an extension but a repudiation of our progressive tort law jurisprudence.  I agree with Judge Fasciale's thorough and well-reasoned analysis, which came to the rather unexceptional conclusion that "a commercial landowner has a duty to take reasonable steps to render a public walkway abutting its property -- covered by snow or ice -- reasonably safe."  Pareja v. Princeton Int'l Props., 463 N.J. Super. 231, 235 (App. Div. 2020) (emphases added).  The Appellate Division did not impose a duty on commercial landowners to do the impossible when

2

precipitation is falling, only what is practicable under all the attendant circumstances.  Id. at 247-48, 251-52.

I would affirm the Appellate Division and therefore respectfully dissent.

I.

A.

"[O]ne of the main functions of tort law is to prevent accidents" by encouraging landowners to exercise ordinary and reasonable care.  See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 448 (1993) (emphasis added). Imposing liability on a commercial landowner for injuries suffered by a blameless pedestrian or patron is intended not only to compensate the innocent injured party, but also to deter irresponsible and negligent conduct by the landowner.  See ibid.

A duty of care is imposed on a landowner when doing so "satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy."  Id. at 439.  For example, "commercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so."  Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 157 (1981) (emphasis added).

3

More to the point, the "maintenance of a public sidewalk in a reasonably good condition <u>may require removal of snow or ice or reduction of the risk</u>, depending upon the circumstances." <u>Mirza v. Filmore Corp.</u>, 92 N.J. 390, 395 (1983) (emphasis added). In <u>Mirza</u>, we stated that "[s]now and ice pose a much more common hazard than dilapidated sidewalks" and that "the duty to remove snow and ice is more important," "less onerous," and "less expensive and more easily accomplished than" the duty of major or minor sidewalk maintenance. <u>See</u> <u>ibid.</u> We noted that "commercial landowners should be encouraged to eliminate or reduce the dangers which may be so readily abated." <u>Ibid.</u>

We eschewed any bright-line rule and instead held that "[t]he test is whether a <u>reasonably prudent</u> person, who knows or should have known of the condition, would have within a <u>reasonable period of time</u> thereafter caused the public sidewalk to be in reasonably safe condition." <u>Id.</u> at 395-96 (emphases added) (footnote omitted). We concluded that "[t]he many innocent plaintiffs that suffer injury because of unreasonable accumulations should not be left without recourse." <u>Id.</u> at 395.

One of the public policy rationales for imposing on commercial landowners the duty of clearing their sidewalks of snow and ice is the economic benefit they receive from keeping their sidewalks "in good repair."

4

See Stewart, 87 N.J. at 159 (quoting Krug v. Wanner, 28 N.J. 174, 179-80 (1958)). "[S]idewalks provide commercial owners with easy access to their premises and increase the value of their property." Id. at 152 (emphasis added). We imposed a duty on commercial landowners in Mirza to clear their walkways of snow and ice knowing that the protection of the public from harm and the compensation of those injured would not be without cost -- and that "spreading the risk of loss" might occur "through the increase of future insurance policy premiums, or . . . through higher charges for the commercial enterprise's goods or services." See Luchejko v. City of Hoboken, 207 N.J. 191, 203 (2011) (omission in original) (quoting Mirza, 92 N.J. at 397).

B.

Never before has this Court held that a commercial landowner has no duty to exercise reasonable care to make safe its walkways until a reasonable time after rain, sleet, or snow stops falling. See Pareja, 463 N.J. Super. at 239-41. In the case before us, it makes no difference to the majority that it may not have been onerous or expensive for the commercial landowner to salt or shovel the icy walkway on which plaintiff Pareja fell and broke his hip. At the time of Pareja's fall, there was no snowstorm, just light rain and pockets of freezing rain. See ante at ___ (slip op. at 4).

5

In adopting the ongoing storm rule, the majority has accepted the premise "that it is categorically inexpedient and impractical to remove or reduce hazards from snow and ice while the precipitation is ongoing." Ante at ___ (slip op. at 16). The majority, however, does not attempt to explain how that premise can possibly be correct in all or even in most circumstances. Is it really "inexpedient and impractical to remove or reduce hazards from snow and ice while the precipitation is ongoing" if there is only a light dusting of snow or a light falling of freezing rain? Under a reasonableness analysis, circumstances matter -- the type of winter weather event matters.

It is not a futile undertaking for commercial landowners exercising ordinary and reasonable care to protect their tenants, customers, or the general public if there is precipitation still falling after a minor snowfall or ice storm. Although snow removal would be impracticable during an ongoing blizzard, the same could not be said if there were an inch or two of snow and continuing light flurries, and the landowner could render the sidewalk safe with little effort or expense.

The adoption of the ongoing storm rule is certainly a boon to commercial landowners who will have no duty to go to the expense of salting or shoveling a sidewalk while even slight precipitation is falling. But what about the safety of a public employee, such as Janet Dixon, who works in a

6

commercially owned building and leaves the office at 7:00 p.m., and falls and fractures her hip on an icy sidewalk because the building's live-in maintenance manager made no effort to salt or shovel the sidewalk of snow or sleet while precipitation still fell?  See Dixon v. HC Equities Assocs., LP, 241 N.J. 132, 133 (2020) (Albin, J., dissenting).  How many more Janet Dixons must suffer serious injuries because a commercial landowner has no duty to exercise reasonable care when it is practicable to do so?  To be sure, those at risk for the most serious injuries from the ongoing storm rule will be the elderly and those with physical disabilities.

"There is a simple logic behind the law of premises liability:  when business owners exercise due care, there are fewer accidents . . . ."  Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 326 (2010) (Albin, J., dissenting).  The costs of preventable injuries are borne not just by the victim but also "by society in many different ways, including through unemployment insurance, social services, and increased health-care costs."  Ibid.  The ongoing storm rule does not advance a sound or enlightened public policy.

C.

The majority aligns itself with the greater number of states that have opted against imposing a duty on commercial landowners because of concerns about impracticability and inexpediency.  See ante at ___ (slip op. at 17).

7

However, "we have never slavishly followed the popular trends in other jurisdictions, particularly when the majority approach is incompatible with the unique interests, values, customs, and concerns of our people." See Lewis v. Harris, 188 N.J. 415, 456 (2006).

The basic tort law principles enunciated by this Court are best reflected by the considerable number of jurisdictions that have rejected the ongoing storm rule. See, e.g., Carter v. Bullitt Host, LLC, 471 S.W.3d 288, 299-300 (Ky. 2015); Budzko v. One City Ctr. Assocs. Ltd. P'ship, 767 A.2d 310, 314 (Me. 2001); Danner v. Myott Park, Ltd., 306 N.W.2d 580, 583 (Neb. 1981); Henderson v. Reid Hosp. & Healthcare Servs., 17 N.E.3d 311, 319 (Ind. Ct. App. 2014); Lundy v. Groty, 367 N.W.2d 448, 449-50 (Mich. Ct. App. 1985); Cramer v. Van Parys, 500 P.2d 1255, 1261-62 (Wash. Ct. App. 1972); Pessagno v. Euclid Inv. Co., 112 F.2d 577, 579 (D.C. Cir. 1940). Those courts generally hold that, considering all of the circumstances, a commercial landowner has a duty to take reasonable steps to render a walkway, covered by snow or ice, safe from foreseeable dangers, even when precipitation is still falling. The reasoning of those cases is consistent with our holdings in Stewart and Mirza.

8

## D.

The majority carves out an exception to its ongoing storm rule, stating that commercial landowners may be subject to liability "if their actions increase the risk to pedestrians and invitees on their property." Ante at ___ (slip op. at 17). That is not a salutary exception. It tells commercial landowners that they are exposed to liability only if they act. It thus is likely to encourage landowners to do nothing.

## II.

The Appellate Division got it right in rejecting the ongoing storm rule as inconsistent with this Court's jurisprudence. A commercial landowner is expected to do only what is prudent and reasonable, not what is "inexpedient or impractical." Pareja, 463 N.J. Super. at 251-52. The duty of ordinary care merely requires "a commercial landowner to act in a reasonably prudent manner under all circumstances." Id. at 252. I too therefore would "hold that a commercial landowner has a duty to take reasonable steps to render a public walkway abutting its property -- covered by snow or ice -- reasonably safe, even when precipitation is falling." See id. at 251.

I cannot join an opinion that immunizes commercial landowners from liability when they do not take reasonable steps to protect the safety of tenants,

workers, and retail customers in their buildings, and others who use their sidewalks, merely because precipitation is falling.

I therefore respectfully dissent.